## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

VIRGINIA M. LAMBRIX,
individually and on behalf of all others
similarly situated,

        Plaintiff

    v.

TESLA, Inc.,

        Defendant.

Misc. Action No. TK

## TESLA, INC.'S MOTION TO COMPEL MORGAN AUTOMOTIVE GROUP'S COMPLIANCE WITH NON-PARTY SUBPOENA AND SUPPORTING MEMORANDUM OF LAW

## I.    Introduction

Tesla, Inc. seeks an order compelling Morgan Automotive Group to comply with a non-party subpoena for documents served in *Lambrix v. Tesla, Inc.*, No. 3:23-cv-1145-TLT (N.D. Cal.), a set of consolidated putative antitrust class actions currently pending in the Northern District of California.  *See* Ex. 1, Subpoena from Tesla to Morgan.  Tesla served this subpoena on Morgan—one of the largest auto dealership organizations in the country—because Tesla competes with Morgan in the alleged automotive sales, leasing, and repair and service markets at issue in the *Lambrix* litigation.  Such non-party discovery from competitors is commonplace in antitrust cases, which often require fact-intensive inquiries into the industries at issue.  Tesla properly served the subpoena on September 30, 2024, and provided Morgan with thirty days to respond.  Ex. 2, Proof of Service of Subpoena on Morgan Auto Group, Sept. 30, 2024.  To date, however, Morgan has failed to respond or even acknowledge receipt.  The Court should accordingly enter an order requiring Morgan to comply with the subpoena by beginning to produce responsive documents within 21 days.

## II.    Background

### A.    The *Lambrix* Litigation

The subpoena at issue relates to consolidated nationwide putative class actions brought against Tesla in the Northern District of California asserting claims under the Sherman Antitrust Act.  *Lambrix v. Tesla, Inc.*, No. 3:23-cv-1145-TLT,

Dkt. 131, 2d Am. Compl. ¶1 (N.D. Cal. Dec. 8, 2023).  Plaintiffs claim that Tesla has monopolized a relevant market for electric vehicles ("EVs") and then leveraged that market power to restrict competition for Tesla repair services and Tesla replacement parts.  *Id.* ¶4.  As part of this supposed effort to suppress competition, Plaintiffs allege that Tesla imposes "onerous" requirements on "Tesla-approved" repair centers that are not comparable to the terms that apply to franchise dealerships that perform maintenance and repair services on behalf of other auto manufacturers.  *See, e.g.*, *id.* ¶¶152-153, 167-174.  The result of Tesla's practices, Plaintiffs claim, is that Tesla owners are "locked in" to using only Tesla when seeking to repair or obtain parts for their vehicles.  *Id.* ¶¶72, 83.

Tesla disputes these allegations.  An important issue in the case is the accuracy of Plaintiffs' assertion that a "completely separate" EV-only market exists.  *Contra* 2d Am. Compl. ¶¶50-51.  Tesla contends that there is no such market for various reasons, and that instead, Tesla faces competition from a combination of vehicles, including hybrids and vehicles with gasoline-powered internal-combustion engines ("ICE").  Tesla also denies that the policies or practices applicable to Tesla-owned service centers or "Tesla-approved" facilities are unreasonably onerous or restrictive and intends to point to the policies of other automobile manufacturers and dealers to demonstrate that the challenged practices are not the result of market or monopoly power.

**B.      Tesla's Subpoena to Morgan and Morgan's Non-Responsiveness**

To defend itself against Plaintiffs' far-reaching claims, and as is standard in antitrust cases, Tesla has sought documents from its competitors in the relevant market, including dealership groups who sell, lease, and service EVs, hybrids, and ICE vehicles.  As part of these efforts, on September 30, 2024, Tesla issued a Rule 45 document subpoena to Morgan, one of the nation's largest dealership organizations, which generated "over $8 billion in revenue" in 2023.  Louis Llovio, *Morgan Automotive Buys 9 Miami Dealerships with $1B in* Revenue, Business Observer, Jan. 24, 2024.  The subpoena includes 16 requests for production of documents relevant to issues in this case, including competition for the sale and lease of EVs, hybrids, and ICE vehicles; policies and procedures governing the maintenance and repair of vehicles; and documents analyzing competition in the aftermarkets for repair services and replacement parts.  *See* Ex. 1.  The subpoena also attaches the Protective Order entered by the district court in *Lambrix*, which provides numerous confidentiality protections, including a "Highly Confidential – Attorney's Eyes Only" designation for sensitive business information.  *Id.*

Tesla effected proper service on September 30, 2024 by hand delivery on Morgan's registered agent at 300 South Orange Street, Suite 1600, Orlando, FL 32801, who stated they were authorized to accept service on Morgan's behalf.  Ex. 2.  On October 1, counsel for Tesla emailed courtesy copies of the subpoena and

service to Travis Santos, Morgan's General Counsel. Ex. 3, Email from Andres Salinas to Travis Santos, Oct. 1, 2024. After Tesla's counsel received no response to that email or undeliverable notification, counsel sent another email to Mr. Santos on October 31 asking "that [he] acknowledge receipt of this email by Wednesday, November 6, 2024." Ex. 4, Email from Andres Salinas to Travis Santos, Oct. 30, 2024. Counsel did not receive a response or undeliverable notification in response to this second email either.

Consistent with Federal Rule of Civil Procedure 45(c)(2)(A), the subpoena sought compliance in Tampa, Florida, within 100 miles of Morgan's main headquarters. The subpoena demanded a response from Morgan within thirty days of service. To date, however, Morgan still has not responded to the subpoena or acknowledged the emails from Tesla's counsel.

## III.  Legal Standard

Federal Rules of Civil Procedure 26(b) and 45 allow a party to a lawsuit to obtain discovery from a non-party if the discovery sought is "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), and is not privileged, duplicative, or unduly burdensome, Fed. R. Civ. P. 26(b)(2)(C)(i) & 45(d)(3)(A).

Relevance is "construed liberally" for purposes of discovery; requests are relevant if they "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."

*Landstar Glob. Logistics, Inc. v. Haskins*, 2011 WL 13176155, at *1 (M.D. Fla. Jan. 25, 2011). That is particularly true when the underlying action is taking place in a different court than the one in which the subpoena is being enforced. *See United States v. Roy*, 2018 WL 1894731, at *4 (S.D. Fla. Mar. 21, 2018).

When a subpoena is properly served on a non-party and the non-party has not responded to the subpoena, courts in this District will grant motions to compel responses. *Charlery v. United States*, 2024 WL 4567827, at *1 (M.D. Fla. Oct. 24, 2024); *Bennett v. Galer*, 2023 WL 7109620, at *1 (M.D. Fla. Oct. 27, 2023). Failure to provide timely responses to Tesla's discovery requests constitutes a waiver of any objections Morgan might otherwise have had. *Gulati v. Ormond Beach Hosp., LLC*, 2018 WL 7372080, at *2 (M.D. Fla. Dec. 17, 2018) ("When a party fails to respond to discovery, or provides untimely responses, whatever objections it might otherwise have had are generally deemed waived."); *Cadle v. GEICO Gen. Ins. Co.*, 2014 WL 12639859, at *3 (M.D. Fla. Aug. 29, 2014) ("Typically, failure to serve written objections to a subpoena in the time provided by [Rule 45] waives any objections the party may have.")

## IV.  Argument

In this case, an order compelling compliance with the subpoena is warranted for the straightforward reason that Morgan has neglected to respond to the subpoena. Where a party outright fails to respond to a subpoena that has been

properly served, it is appropriate for the court to grant a motion to compel and order that party to respond promptly. *See, e.g.*, *Gulati v. Ormond Beach Hosp., LLC*, 2018 WL 7372080, at *2 (M.D. Fla. Dec. 17, 2018).

Moreover, absent unusual circumstances and "good cause," the failure to serve written objections to a subpoena typically constitutes a waiver of such objections. *Gulati*, 2018 WL 7372080, at *2; *see also, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (collecting cases and explaining that "[t]he failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections").

Applying these standards here, Morgan should be compelled to comply with the subpoena, and its objections should be deemed waived unless it can provide a specific, compelling explanation for its failure to respond. Morgan certainly should not be permitted to claim that there was an unexcused oversight after the subpoena was served, or that the subpoena imposes an undue expense. Morgan is a large and sophisticated party, having generated "over $8 billion in revenue" in 2023. Louis Llovio, *Morgan Automotive Buys 9 Miami Dealerships with $1B in Revenue*, Business Observer, Jan. 24, 2024.

Nor is the subpoena anywhere near "overbroad on its face," especially given the claims and defenses at issue in the *Lambrix* litigation. *Long v. City of Concord*,

6

2022 WL 16916368, at *2 (E.D.N.C. Nov. 14, 2022).  Antitrust cases are fact-intensive and frequently implicate wide-ranging inquiries into entire industries.  *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 257 F.R.D. 580, 586 (N.D. Cal. 2009) (noting the "broad discovery that is allowed in anti-trust [sic] cases"); *Kleen Prod. LLC v. Packaging Corp. of Am.,* No. 10 C 5711, 2012 WL 4498465, at *13 (N.D. Ill. Sept. 28, 2012) ("[D]iscovery in antitrust litigation is most broadly permitted").  Thus, non-parties who participate in the relevant industry are routinely required to produce discovery far more voluminous than Tesla seeks in this subpoena.  *See, e.g.*, Tr. of Oct. 29, 2021 Status Conf. at 17:8-12, *United States v. Google LLC*, No. 20-cv-03010-APM (ECF 249) (D.D.C. Oct. 29, 2021) (Microsoft "has produced over 1.2 million documents"); Status Report, *FTC v. Qualcomm Inc.*, No. 5:17-cv-00220-LHK-NMC (ECF 663) (N.D. Cal. Mar. 30, 2018) ("Apple has produced more than 4.1 million documents totaling over 37 million pages"); *United States v. AT&T Inc.*, No. 1:11-cv-01560, 2011 WL 5347178, at *5-*7 (D.D.C. Nov. 6, 2011) (denying motion to quash non-party subpoena calling for production of 440,000 pages of documents).

The requests in the subpoena served on Morgan are also plainly relevant. Several of the requests (Nos. 1-4) seek documents related to competition in the alleged "foremarket" for passenger automobiles; those requests bear directly on the threshold question in *Lambrix* of whether an EV-only market is cognizable.  *See,*

*e.g.*, *Delco LLC v. Giant of Md., LLC*, No. CIV. 07-3522, 2007 WL 3307018, at *17 (D.N.J. Nov. 8, 2007) (courts "regularly take account of industry participants' perspectives on who their competitors are in order to shed light on the interchangeability of the products they offer."). Other requests (Nos. 5, 9, 10, and 11) seek policies, procedures, and analyses concerning the terms under which automobile dealerships provide maintenance, repair, and body-work services, as well as replacement parts. Whether the policies applicable to Tesla vehicles are similar to, or differ from, those dealership policies informs whether Tesla's conduct has been anticompetitive. *See, e.g.*, *Bepco, Inc. v. Allied-Signal, Inc.*, 106 F. Supp. 2d 814, 832 (M.D.N.C. 2000) (alleged theory of anticompetitive conduct fail[ed]" because "[t]he record reveal[ed] that all" participants "in the relevant markets" employed policies with "characteristics" "similar" to the defendant's). Another category of requests (Nos. 6-8 and 12) seeks analyses of competition in the aftermarkets for service and replacement parts, which likewise inform whether competition has been unreasonably suppressed for Tesla service and parts. And the remaining requests seek information directly responsive to Plaintiffs' allegations in the *Lambrix* complaint, including the allegation that Tesla's service, repair, and parts prices are "supracompetitive" (*see, e.g.*, 2d Am. Compl. ¶¶1, 64, 78, 231, 238, 252; Request No. 14); and the allegations that Tesla's business model means that it lacks "many of the incentives" that "[d]ealers … have" "to make parts and

8

support available to customers" (2d Am. Compl. ¶¶152-153, Request Nos. 13 and 15).

Accordingly, the scope of the subpoena here is appropriate in light of the nature of the claims asserted against Tesla in *Lambrix*. The Court should compel Morgan to comply with the subpoena and deem Morgan to have waived all objections. Moreover, the Court should order Morgan to begin producing responsive documents within 21 days in light of the *Lambrix* case schedule, under which Tesla's class-certification expert report is due January 27, 2025, and its class-certification opposition brief is due April 10, 2025.

## V.    Conclusion

The Court should grant Tesla's motion to compel and order Morgan to begin producing responsive documents within 21 days.

December 9, 2024

> Michael L. Forte
> Florida Bar No. 0592161
> RUMBERGER, KIRK &
> CALDWELL, P.A.
> 100 North Tampa St., Ste. 2000
> Tampa, FL 33602
> 813-857-4950
> mforte@rumberger.com
>
> Ari Holtzblatt (*pro hac vice*
> forthcoming)
> WILMER CUTLER PICKERING
>     HALE AND DORR LLP
> 2100 Pennsylvania Ave NW

Washington, DC 20037
(202) 663-6000
Ari.Holtzblatt@wilmerhale.com

David Gringer (*pro hac vice* forthcoming)
Andres C. Salinas (*pro hac vice* forthcoming)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
David.Gringer@wilmerhale.com
Andres.Salinas@wilmerhale.com

## CERTIFICATE PURSUANT TO LOCAL RULE 3.01(g)

I hereby certify that, consistent with Local Rule 3.01(g), on October 1 and October 31, 2024, I contacted identified counsel for Morgan Automotive and offered to confer in good faith about the subpoena at issue in this proceeding to avoid the need to file this motion, yet I never received a response from anyone at Morgan Automotive.

*/s/ Andres C. Salinas*
Andres C. Salinas

19988356.v1